**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WALI PALMER, | Civil No. 04-4455 (FLW) |
| Petitioner, | |
| v. | **O P I N I O N** |
| ROY L. HENDRICKS, et al., | |
| Respondents. | |

**APPEARANCES:**

WALI PALMER, #301697C
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625
Petitioner pro se

JACK J. LIPARI, Assistant Prosecutor
JEFFREY S. BLITZ, ATLANTIC COUNTY PROSECUTOR
P.O. Box 2002
Mays Landing, New Jersey 08330
Attorneys for Respondents

**WOLFSON**, District Judge

Wali Palmer filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a)

challenging a judgment of conviction in the Superior Court of New Jersey. Respondents filed an

Answer, with relevant portions of the state court record, arguing that the Petition should be

dismissed on the merits. Petitioner filed a Reply Brief. For the reasons expressed below, the

Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.

See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I. BACKGROUND

Petitioner challenges a judgment of conviction entered on July 9, 1999, in the Superior

Court of New Jersey, Law Division, Atlantic County, after a jury convicted him of aggravated

manslaughter, aggravated assault, possession of a handgun for an unlawful purpose, and unlawful

possession of a handgun.[1]   The Law Division sentenced Petitioner to an aggregate 30-year term

of imprisonment, with an 85% No Early Release Act parole ineligibility term.   Petitioner

appealed, and in an opinion filed March 19, 2001, the Appellate Division of the Superior Court

of New Jersey affirmed.   State v. Palmer, No. A-129-99T4 slip op. (App. Div. Mar. 19, 2001).

On June 21, 2001, the Supreme Court of New Jersey denied certification.   State v. Palmer, 169

N.J. 606 (2001) (table).

On August 14, 2001, Petitioner executed a pro se petition for post conviction relief

asserting ineffective assistance of counsel, which was filed in the Law Division on September 13,

2001.   By order filed October 1, 2002, the Law Division denied relief without conducting an

evidentiary hearing.   Petitioner appealed, and in an opinion filed March 5, 2004, the Appellate

Division affirmed the order denying post conviction relief.   On May 21, 2004, the New Jersey

Supreme Court denied certification.   State v. Palmer, 180 N.J. 357 (2004) (table).

---

[1] The Appellate Division summarized the facts as follows:

> Defendant's conviction arises from a shooting in a bar in Atlantic
> City on March 27, 1998.   One person died and another was shot in
> the leg and survived.   Defendant was identified as the shooter.
> Defendant was convicted following a jury trial at which he did not
> testify.

State v. Palmer, No. A-2049-02T4 slip op. at 2 (App. Div. March 5, 2004).

2

Petitioner executed the Petition which is now before the Court on September 8, 2004.

The Clerk received it on September 14, 2004. The Court notified Petitioner of the consequences

of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and

gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents 10 grounds, including

eight ineffective assistance of counsel claims, prosecutorial misconduct, and violation of his

privilege against self-incrimination. The State filed an Answer seeking dismissal of the Petition

on the merits, arguing that none of the grounds asserted satisfies the standard for habeas relief.

Petitioner filed a Reply Brief, arguing that this Court should conduct an evidentiary hearing on

his ineffective assistance of counsel claims and that the adjudication of his claims by the New

Jersey courts was contrary to or an unreasonable application of federal law, determined by the

Supreme Court.

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S.

3

62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2] Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[3] "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

4

(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71,

73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton,

256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87,

90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and

appellate courts are correct, a presumption that can only be overcome on the basis of clear and

convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361,

368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits" [4] in state court

proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the

governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a

---

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving
the parties' claims, with res judicata effect, that is based on the substance of the claim advanced,
rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir.
2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render
an adjudication or decision on the merits of a federal claim by rejecting the claim without any
discussion whatsoever. Rompilla, 355 F.3d at 247.

[different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

## III. DISCUSSION

A. Prosecutorial Misconduct

In Ground Nine, Petitioner contends that the prosecutor's comments during summation violated his right to remain silent. Specifically, he asserts in the Petition:

> GROUND NINE: The Petitioner's conviction was obtained in violation of the Petitioner's fundamental right to a Fair Trial and Privilege Against Self-Incrimination. United States Constitution Amendments 5, 14..
>
> Supporting FACTS: The prosecutor's reference[s] to the petitioner's failure to testify during his closing summation were improper and deprived the Petitioner of a Fair Trial.

6

(Pet. ¶ 12.I.)

The record shows that Petitioner's trial attorney made the following argument in his

closing statement with regard to the lethal shooting of Jerry Cooper:

> ...You're going to have presented to you the charge of murder with
> regard to Jerry Cooper.  I suggest to you it is not murder.  We
> know[] who did the shooting.  Wali Palmer did it, but it is not
> murder for a number of legal reasons.  Was his action purposeful
> and knowing?  It was, he says so on the tape.  He pulled the gun.
> He pointed it at those guys and he fired.  Was it self-defense?  In
> his mind yes, but for legal reasons the Judge is going to tell you
> self-defense doesn't work.  Then you're going to consider passion
> provocation.  I've discussed the facts somewhat.  You apply the
> facts.  Was he reasonably provoked in that situation, and did he
> have time to cool off?  If you answer those questions, you will find
> it is not murder, it is perhaps a passion provocation manslaughter .
> . . .

(State v. Palmer, Trial Tr. p.30-34 to p. 31-12, June 23, 1999).  In regard to the shooting of Ace,

defense counsel argued that Petitioner was not guilty of any crime because Petitioner shot Ace in

self defense:

> . . . and you had very clear testimony yesterday from the final
> State's witness - trying to recall her name - I think that was Ms.
> Lampkin, Rhonda came down from the witness stand and told you
> that Ace stomped my client.  He was on the ground and he got
> stomped by Ace.  So clearly at least as far as Ace is concerned,
> self-defense should apply.

(Id. Trial Tr. p. 27-5 to p. 27-10.)

The prosecutor responded to Petitioner's passion provocation manslaughter defense by

arguing the absence of adequate provocation and arguing that Petitioner was not actually

impassioned by a provocation.  (Id. Trial Tr. p. 36-24 to p. 37-8.)  To support his contention that

7

Petitioner was not provoked or inflamed by one punch to the head, the prosecutor played a

portion of Petitioner's taped statement to police. Then the prosecutor argued:

> And I submit to you when he touched the area of that girl's butt
> and that guy came over and punched him in the head, that was a
> form of disrespect and Wali Palmer had armed himself because he
> was not going to stand for that. He was not going to allow that to
> happed to him. And he was going to take steps to prevent it. And
> what steps did he take? As soon as he got hit, he pulled that gun
> out. Self-protection? He got punched in the head, ladies and
> gentlemen, and they're running away. He wasn't going to let it
> stop there. He was going to let everybody know you don't mess
> with Wali Palmer. So he started firing that gun and that's why -
> that's why he had that gun.

> Now, what was his intention? Well, he told you Jerry Cooper got
> shot by mistake. It was never supposed to happen that way, that's
> what he told Officer O'Hala at the hospital . . . What was supposed
> to happen? Well, Wali was supposed to shoot the guys he was
> aiming at and he was shooting at those guys because they had
> disrespected him. They had the nerve to come up after he touched
> somebody's butt, that boyfriend had the nerve to come over and
> punch him in the face; so Wali Palmer took care of that. Street
> justice.

> Now, ladies and gentlemen, in this case, I submit there is no
> evidence to support the contention that Wali Palmer was inflamed.
> There's no evidence to support the contention that he was injured
> to the point where a reasonable person would believe that he had
> the need, let alone the right, to pull out a gun and start shooting at
> people. What I submit that that is in this case is Wali Palmer
> taking the law into his own hands because he wants everybody in
> Herman's to know he's not going to stand for any crap.

> Well, ladies and gentlemen, it's up to you to tell Wali Palmer
> what the law - the law in the State of New Jersey is not going to
> allow him to get away with shooting two people in Herman's Bar
> to show that he's not going to put up with any crap. Thank you.

State v. Palmer, Trial Tr. p. 74, lines 9-23, June 23, 1999.

Petitioner raised the prosecutorial misconduct claim on direct appeal. The Appellate Division rejected the claim, finding that it was "without merit and does not warrant discussion in a written opinion." State v. Palmer, No. 129-99T4 slip op. at 8 (App. Div. March 19, 2001).

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642.

The Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Petitioner's claim is based on Griffin v. State of California, 380 U.S. 609, 611 (1965). In Griffin, the defendant was convicted of first degree murder after the prosecution had stated in summation that the defendant was the only person who could provide information as to certain details relating to the murder and yet defendant had "'not seen fit to take the stand and deny or explain.'" The Supreme Court reversed the conviction on the ground that "the Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Id. at 615.[5]

However, in United States v. Robinson, 485 U.S. 25, 32 (1988), the Supreme Court limited Griffin. In Robinson, the Supreme Court held that the prosecutor's statement during summation that the defendant could have explained to the jury his story did not violate the right

---

[5] See also Baxter v. Palmigiano, 425 U.S. 308, 319 (1976) ("Griffin prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt").

9

against self-incrimination where the prosecutor was responding to an argument made by defense

counsel.  Robinson, 485 U.S. at 32.  Specifically, the Court held:

> Where the prosecutor on his own initiative asks the jury to draw an
> adverse inference from a defendant's silence, Griffin holds that the
> privilege against compulsory self-incrimination is violated.  But
> where as in this case the prosecutor's reference to the defendant's
> opportunity to testify is a fair response to a claim made by
> defendant or his counsel, we think there is no violation of the
> privilege.

Robinson, 485 U.S. at 32.[6]

This Court concludes that the adjudication of Petitioner's prosecutorial misconduct claim

by the New Jersey courts did not result in a decision that was contrary to or involved an

unreasonable application of United States v. Robinson, 485 U.S. at 32.  Petitioner is therefore not

entitled to habeas relief on this ground.

B.  Self-Incrimination

In Ground 10, Petitioner asserts that the admission of his oral statements to Officer

O'Hala at the hospital violated his privilege against self-incrimination because he was in custody

and Miranda warnings had not been given.  In addition, he maintains that the admission of his

tape-recorded statement to Detective Graham violated his privilege against self-incrimination

because it was not voluntary.  Specifically, Petitioner asserts in the Petition:

> GROUND TEN:  The Admission of Petitioner's Oral and Tape
> Recorded Statements Violated the Petitioner's Privilege Against
> Self-Incrimination.  U.S.C.A. Const. Amend. 5.

---

[6] See also United States v. Isaac, 134 F.3d 199, 206-07 (3d Cir. 1998) ("when the
defendant uses his Griffin protection as a sword, rather than a shield, the prosecution may
respond appropriately").

10

> Supporting FACTS:  Admission of the petitioner's oral statements made to Officer O'Hala at the hospital prior to being advised of his Miranda rights and admission of the petitioner's oral and tape recorded statements made to Detective Graham at the police station constituted reversible error.

(Pet. ¶ 12.J.)

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self incrimination.  Malloy v. Hogan, 378 U.S. 1, 8 (1964).

In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467.   When police ask questions of a suspect in custody without administering the required warnings, Miranda dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  Thus, a confession taken during a custodial interrogation without the provision of Miranda warnings violates the privilege against Self Incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995).  "To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the Miranda Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." Thompson, 516 U.S. at 107; see also Miranda, 384 U.S. at 479.

11

However, the Supreme Court held in Oregon v. Elstad, 470 U.S. at 318, that "a suspect

who has once responded to unwarned yet uncoercive questioning is not thereby disabled from

waiving his rights and confessing after he has been given the requisite Miranda warnings."

> It is an unwarranted extension of Miranda to hold that a simple
> failure to administer the warnings, unaccompanied by any actual
> coercion or other circumstances calculated to undermine the
> suspect's ability to exercise his free will, so taints the investigatory
> process that a subsequent voluntary and informed waiver is
> ineffective for some indeterminate period. Though Miranda
> requires that the unwarned admission must be suppressed, the
> admissibility of any subsequent statement should turn in these
> circumstances solely on whether it is knowingly and voluntarily
> made.

Elstad 470 U.S. at 309.

The Supreme Court also held in Rhode Island v. Innis, 446 U.S. 291, 300-302 (1980),

that the privilege against Self Incrimination does not prohibit admission of an unsolicited

statement made by a defendant who is not being interrogated by police, despite the absence of

Miranda warnings.

> We conclude that the Miranda safeguards come into play whenever
> a person in custody is subjected to either express questioning or its
> functional equivalent. That is to say, the term "interrogation" under
> Miranda refers not only to express questioning, but also to any
> words or actions on the part of the police (other than those
> normally attendant to arrest and custody) that the police should
> know are reasonably likely to elicit an incriminating response from
> the suspect. The latter portion of this definition focuses primarily
> upon the perceptions of the suspect, rather than the intent of the
> police. This focus reflects the fact that the Miranda safeguards
> were designed to vest a suspect in custody with an added measure
> of protection against coercive police practices, without regard to
> objective proof of the underlying intent of the police. A practice
> that the police should know is reasonably likely to evoke an
> incriminating response from a suspect thus amounts to
> interrogation. But, since the police surely cannot be held

12

> accountable for the unforeseeable results of their words or actions,
> the definition of interrogation can extend only to words or actions
> on the part of police officers that they *should have known* were
> reasonably likely to elicit an incriminating response.

Rhode Island v. Innis, 446 U.S. at 300-302 (footnotes omitted); see also Arizona v. Mauro, 481

U.S. 520 (1987).

Petitioner challenges the statements he made to Officer O'Hala at the hospital on the

ground that he was in custody and the police had not provided the Miranda warnings.  The

inculpatory statements Petitioner made to Officer O'Hala at the hospital, before receipt of

Miranda warnings, included:  ". . . I don't know why I'm being charged for something this wasn't

suppose[d] to happen . . . I just seen the gun on the floor.  I grabbed it and shot . . ."  State v.

Palmer, No. A-129-99T4 slip op. at 3.  The Appellate Division rejected Petitioner's claim

because the challenged statement was "a spontaneous outburst uttered casually or innocently

without the State's purposeful enticement or encouragement [which] does not constitute express

questioning or its functional equivalent and will not be suppressed despite the failure to

administer Miranda rights."  State v. Palmer, No. A-129-99T4 slip op. at 8 (citations omitted).

This Court holds that the admission of Petitioner's unwarned statement to Officer O'Hala

at the hospital was not contrary to or an unreasonable application of Rhode Island v. Innis, 446

U.S. at 300-02, because the statements were not made in response to express questioning by

Officer O'Hala, nor were the statements elicited in response to words or actions on the part of

O'Hala that he "*should have known* were reasonably likely to elicit an incriminating response."

Id. at 302.[7]

---

[7] Even if O'Hala violated Miranda by questioning Petitioner at the hospital before reading
(continued...)

13

Petitioner also challenges the oral statement he made at the police station in response to interrogation by Detective Graham, after receipt of the Miranda warnings. Petitioner argues that Graham's words were so manipulative or coercive that they deprived Petitioner of his ability to make an unconstrained, autonomous decision to confess. (Petitioner's Brief at 44.) Specifically, Petitioner contends that Graham coerced Petitioner's confession when Graham told Petitioner that "there were inconsistencies in [Petitioner's] story and that from what witnesses have said, that wasn't how the story - what had happened and basically told him that, you know, only making matters worse, you know, to tell the truth." (Id.) Petitioner contends that the warned statements to Graham should have been excluded because they were secured by improper and unfair means. (Id. at p. 43.)

As previously stated, the Supreme Court held in held in Oregon v. Elstad that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings." 470 U.S. at 318.[8] In this case, Petitioner asserts that the statements he made to Det. Graham after receiving the Miranda warnings violated his privilege against Self Incrimination because

---

[7](...continued)
Petitioner his rights, the error does not warrant habeas relief because "[w]here a subsequent confession is obtained constitutionally, the admission of prior inadmissible confessions [is] harmless error." Reinert v. Larkins, 379 F.3d 76, 87 (3d Cir. 2004) (quoting United States v. Johnson, 816 F.2d 918, 923 (3d Cir. 1987)).

[8] But see Missouri v. Seibert, 542 U.S. 600 (2004) (Kennedy, J., concurring) (where police protocol calls for interrogating a suspect without Miranda warnings, eliciting a confession, providing Miranda warnings, and then leading suspect to confess a second time, confession is inadmissable because "two-step questioning technique [is] based on a deliberate violation of Miranda. The Miranda warning was withheld to obscure both the practical and legal significance of the admonition when finally given").

14

Graham coerced the confession, overriding Petitioner's free will, by directing him to tell the truth

because the police had witnesses and a false story would make matters worse.

In Miranda, the Court noted that "[t]he defendant may waive effectuation of these rights,

provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

The Court articulated the two-pronged test for waiver in Moran v. Burbine, 475 U.S. 412 (1986):

> First, the relinquishment of the right must have been voluntary in
> the sense that it was the product of a free and deliberate choice
> rather than intimidation, coercion, or deception. Second, the
> waiver must have been made with a full awareness of both the
> nature of the right being abandoned and the consequences of the
> decision to abandon it. Only if the totality of the circumstances
> surrounding the interrogation reveal both an uncoerced choice and
> the requisite level of comprehension may a court properly conclude
> that the Miranda rights have been waived.

Id. at 421 (citations and internal quotation marks omitted).

As the Third Circuit explained in another § 2254 case,

> This inquiry requires us to consider the totality of the
> circumstances surrounding the interrogation, which includes
> examining the events that occurred and the background,
> experience, and conduct of the defendant. Miranda rights will be
> deemed waived only where the totality of the circumstances
> "reveal[s] both an uncoerced choice and the requisite level of
> comprehension."

Reinert v. Larkins, 379 F.3d 76, 88 (3d Cir. 2004) (quoting Moran, 475 U.S. at 421) (citations

omitted).

The record here shows that the state trial judge concluded, after conducting a suppression

hearing, that Petitioner's statements were given freely and voluntarily:

> With respect to the taped statement, the context of it and what
> was said is, and the manner in which it was said is significant.
> There appear[s] to be clearly no coercion. Appear[s] to be freely

15

given and voluntary.  The Defendant acknowledges having been given his rights at the beginning and then again does so at the end, which is electronic corroboration of the testimony of Detective Graham.

So for the reasons which I have articulated, I do conclude that the Defendant was appropriately advised of his Miranda rights through the reading of that form and was given that form to read. Apparently did read it.  Ultimately signed it voluntarily and then gave the statements which are in issue here today.  The statements are evidential.

(Stenographic Transcript of Miranda Hearing, p. 57-10 to 57-22, June 14, 1999.)

The Appellate Division affirmed, ruling:

A defendant may effectively waive his right against self-incrimination and his right to an attorney if he does so "voluntarily, knowingly, and intelligently."  Miranda, supra, 384 U.S. at 444 . . . The State must prove the validity of a waiver beyond a reasonable doubt . . . .  Here, defendant argues that his oral and taped statement at police headquarters was the product of unfair means employed by the detective who conducted the interview. Specifically, he contends that the detective made a coercive admonition to tell the truth because he said withholding the truth would make things worse.

In the face of a charge of coercion, the trial judge must examine the totality of the circumstances, including the nature of the alleged coercive activity and the defendant's state of mind.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) . . . .  Furthermore, in reviewing a trial court's finding of voluntariness, this court's role is solely to determine whether the finding is based on sufficient credible evidence in the record . . . .  In this case, Judge Connor found that defendant freely and voluntarily waived his rights.  That finding is entitled to considerable deference . . . .

Here, the detective's statement is not inherently coercive. Furthermore, the totality of the circumstances provide no basis to find that defendant's will was overborne.

State v. Palmer, No. 129-99T4 slip op. at 6-7.

16

This Court holds that the New Jersey courts' adjudication of Petitioner's claim that his warned confession was coerced is not contrary to or an unreasonable application of the Supreme Court's holdings in Miranda, Oregon v. Elstad, and Moran v. Burbine.

C. Ineffective Assistance of Counsel

In Grounds One through Eight, Petitioner cites numerous instances of deficient performance by defense counsel, i.e., counsel's failure to inform him of his right to testify at the Miranda hearing and at the trial, counsel's failure to request a jury charge on accident, counsel's improperly stating during summation that self defense did not apply to the murder charge and that gangs were involved, counsel's failure to present expert testimony regarding the signature on the Miranda waiver form or to object to the trial judge's lay analysis of the signature, and counsel's failure to adequately consult with Petitioner. (Pet. ¶ 12.A. to 12.H.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine

17

whether, in light of all the circumstances at the time, the identified errors were so serious that

they were outside the wide range of professionally competent assistance. Id.

To satisfy the second prong, the defendant must show that "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt." Id. at 695.

In this case, Petitioner presented the deficiencies which he asserts here on post conviction

relief. The Law Division rejected all of Petitioner's claims without conducting an evidentiary

hearing.

> With respect to failing to have a handwriting expert analyze the
> signature on the Miranda rights form to substantiate the prisoner's
> contention, I would incorporate by reference the rulings which
> were made at the time of the Miranda hearing in this particular
> case, and any intelligent observer is invited to compare the
> signatures to say - and even assuming at the trial level that the first
> prong of Strickland was met, that the failure was somehow
> deficient, there is no showing even at this level that it is not; that
> there is an expert available who would say that it isn't his
> signature. So the second prong of Strickland is not met . . . . The
> cumulative effect, that is nothing essentially wrong to begin with.
> The cumulative effect has nothing wrong. Of concern to the Court
> in the supplemental pleading filed by Mr. Palmer is his contention
> that he was never told of his right to testify . . . And but for the
> existence of what transpired at trial, arguably under the applicable
> law, a form of hearing would need to be held. But if one takes a
> look at the transcript of the trial, it's evident that that is meritless,
> that his present contention is meritless because the record belies his
> contention. At the close of the State's proofs, an opportunity was
> given to discuss the matter with the defendant as to what he was
> going to do with respect to further proceeding. What obviously
> happened, without intruding on the lawyer-client privilege, is issue
> of what was going to be done by way of a defense was discussed
> between Mr. Palmer and Mr. Harris at that point in time and then a
> decision - well, put it this way: Mr. Palmer did not testify. Then
> we get to what transpires with respect to the charge. And Mr.
> Harris says, "Your Honor, I'd like to have you read the defendant's

18

election not to testify charge to my client so that we can make a
decision on that." So we're talking about defendant's election not
to testify, the defendant's right not to testify. Implicit in that is a
right to testify. And the charge that was read to him was this:
"The defendant in this case chose not to be a witness." First line in
the charge. If you choose not to be a witness, you can also choose
to be a witness. So by the charge itself, which was read to the
defendant, the defendant was told by me with respect to his
choices. He chose not to be; implicit in that is a choosing to be.
And the last sentence of the charge is, well, reads that, "The
defendant is entitled to have the jury consider all of the evidence
and he is entitled to the presumption of innocence even if he does
not testify as a witness. Implicit in that as well is the fact that he
can testify as a witness. To say that he was never told that he could
be a witness, I think is belied by the transcript in this particular
case. Accordingly, the Court would rule that the allegations
presented are without merit and would deny the application for
post-conviction relief. I'll return your transcript to you and we'll
take a recess.

(Transcript of Motion for Post-Conviction Relief, p. 17-15 to p. 20-12, Sept. 20, 2002.)

After reviewing the standard under Strickland and the alleged deficiencies of counsel, the

Appellate Division also rejected Petitioner's ineffective assistance claims:

Measured by this standard, defendant has failed to establish a
prima facie case of ineffective assistance of trial, appellate or PCR
counsel. We affirm substantially for the reasons expressed by
Judge Connor in his September 20, 2002, oral opinion. We add the
following brief comments.

Our review of the trial record belies defendant's contentions that
he was unaware of his right to testify and that he had no
discussions with his attorney about this right. In fact, the trial
record reveals pauses in the proceedings for discussions between
trial counsel and defendant, and defendant expressly requested the
trial judge to provide the jury with the optional charge regarding
his right not to testify.

State v. Palmer, No. A-2049-02T4 slip op. at 6.

19

Petitioner is not entitled to habeas relief based on the alleged deficient performance of trial counsel because the New Jersey courts' adjudication of the claims did not result in a decision that was contrary to, or involved an unreasonable application of Strickland or other Supreme Court holdings.

D. Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV. CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**

DATED:    May 15, 2006

20